USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ________________
DATE FILED: 11/17/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------- X
BERKLEY INSURANCE COMPANY,

Plaintiff,

Civ No. 1:26-cv-06168-HJR

-against-

VOLUNTEERS OF AMERICA, INC., VOLUNTEERS OF AMERICA – GREATER NEW YORK, INC., 305 WEST 97TH STREET ASSOCIATES, L.P., and SRO WEST 97TH STREET, INC.,

Defendants.

--------------------------------------------------------- --X

# JOINT DOCUMENT EXCHANGE / ESI PROTOCOL

By agreement of the parties, the terms of this Document Exchange/ESI Protocol (the "Protocol") will govern the document search and identification process and exchange of electronic documents related to this litigation. The parties submit this Protocol pursuant to Federal Rules of Civil Procedure 16, 26, and 34, the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York, and the Individual Rules and Practices of the Court, and in accordance with Section 9 of the Case Management Plan and Scheduling Order (ECF No. 27). The parties may modify the provisions of this Protocol by written agreement, upon written request of either party and for good cause shown.

## I. DEFINITIONS

A. **"The Project"** or **"Project"** shall mean the rehabilitation, renovation and construction work at and for the building located at 305 West 97th Street, New York, New York 10025, known as Rose House.

B. **"Electronically Stored Information"** or **"ESI,"** as used herein, means and refers to computer generated information or data of any kind, stored in or on any storage media located on computers, file servers, disks, tape, or other real or virtualized devices/media. Examples of ESI may include, without limitation, the following:

- Email Server Stores (e.g., Gmail, Microsoft Exchange .EDB, Microsoft O365, etc.);
- Word Processing Documents (e.g., Word files and drafts, Google Docs, etc.);
- Spreadsheets and Tables (e.g., Excel, Google Sheets, etc.);
- Collaboration Software Tools (e.g., Microsoft SharePoint, etc.);
- Document Management Systems (e.g., Documentum);
- Image and Facsimile Files (e.g., .PDF, .TIFF, .JPG, .GIF images);
- Sound Recordings (e.g., .WAV and .MP3 files);
- Video and Animation (e.g., .AVI and .MOV files);
- Databases (e.g., Access, Oracle, SQL Server data, SAP, other);
- Computer Aided Design/Drawing Files (e.g., .STL);
- Contact and Relationship Management Data (e.g., Outlook, ACT!);
- Calendar and Diary Application Data (e.g., Outlook PST, blog entries);
- Presentations (e.g., PowerPoint, Google Slides, etc.);
- Project Management Application Data;
- Task Related Data (e.g., Task lists from Outlook PST); and
- Backup and Archival Files (e.g., Veritas, Zip, .GHO).

C. **"Document"** shall mean every original and non-identical copy (including blind copies), regardless of origin or location, of each and every paper, writing, picture, photograph, negative, slide, movie, film, visual or audio transcription, videotape,

sound recording, microfilm, data stored or recorded on or in punch cards, computer tapes, discs, CD ROMS, reels, or other devices for business machines or other means of storing and/or transmitting human or machine-generated or stored intelligence, and any other printed or readable material irrespective of whether such has ever been in your possession or control. To be included, without limitation, in this definition of "document" are every invoice, statement, bill, ledger sheet, instrument (negotiable or otherwise), order, direction, correspondence, letter, message, envelope, postal receipt, telegraph, telegram, teletype, telex, report, telephone bill, e-mail, memorandum (including, but without limitation, every intra-office or interoffice memorandum, file memorandum, work memorandum, memorandum of telephone conversation or other conversation, and memorandum pertaining to witnesses, including potential witnesses' interviews), sketch, graph, chart, index, note (including, without limitation, notes or drafts used to prepare any letter, memorandum, report or other document as herein defined), contract, agreement, form, work sheet, time sheet, expense ledger, check (canceled or otherwise), check stub, bank statement, deposit slip, debit or credit advice, voucher, receipt, witnesses' (including potential witnesses) statement, transcript, interview, sound recording transcription, license, application, credit report, investigator's report, court or suit paper or pleading, computer printout, book of account, journal, ledger, account records, financial statements, payroll record, minutes, diaries (both office and personal), log file card, raw data, notes and/or trip report pertaining to or based on any finding, data, evidence, statement of expenses incurred, report of investigation, bid, request for proposal, proposal, purchase order, sales order,

record, brochure, newspaper or magazine article or advertisement, book, exhibit, attachment, draft, certificate, table and price list. Documents shall be produced in their native form or format.

D. **"Custodian"** means the individual(s) in possession of ESI which is potentially relevant to a case.

E. **"Native file"** means ESI in the file type for (or of) the application in which such ESI is normally created, viewed, or modified.

F. **"Metadata"** means and refers to information about information or data about data, and includes without limitation (i) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, usage, and/or validity of the electronic file; and/or (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

G. **"Extracted text"** means the text extracted from a native file and includes all header, footer, and document body information.

H. **"Static image"** means a representation of ESI produced by converting a native file into a standard image format capable of being viewed and printed on standard computer systems (e.g., TIFF image).

I. **"Load/unitization file"** means an electronic file containing information identifying a set of processed ESI and indicating where individual pages or files belong together as documents, including attachments, and where each document

begins and ends. A load/unitization file will also contain data relevant to the individual documents, including extracted and user-created metadata and coded data, as well as OCR or extracted text.

J. **"Media"** means an object or device, including but not limited to a disc, tape, computer, or other device, whether or not in the producing party's physical possession, on which data is or was stored.

K. **"Bates number"** refers to a numbering system used to identify individual pages of documents where each page (or native file) is assigned a unique, sequential number, used in conjunction with a designated prefix to identify the producing party.

## II. EMAIL ESI

A. Selection of Key Custodians: No later than ten (10) days after this Protocol is so-ordered by the Court, each party shall identify up to five (5) key custodians for the other party from whom the identifying party seeks to obtain email ESI (the "Key Custodians"). The Parties agree to work together in good faith to help identify any relevant Key Custodian, and the agreed Key Custodians shall be memorialized in writing under separate cover. To the extent that subsequent discovery reveals that potential key custodians were not identified by the Parties, the Parties reserve the right, for good cause, to seek additional ESI from those subsequently discovered key custodians.

B. Agreement on Search Terms:

1. The parties shall meet and confer in good faith to agree upon the search terms to be applied to each party's Key Custodian email, which agreement shall be memorialized in writing under separate cover no later than twenty (20) days

after this Protocol is so-ordered by the Court. Either party may propose additional search terms thereafter, provided that the parties shall confer in good faith regarding the reasonableness and proportionality of any proposed search terms. Unless otherwise agreed, the relevant time period for email ESI shall be January 1, 2018 through present (the "Relevant Period"), and all agreed search terms shall be applied to email ESI dated within the Relevant Period.

i. A search term may consist of a word, word combinations, and/or words used in conjunction with simple Boolean operators (AND, OR, NOT, and Asterisk * for root word/stem/truncation search (e.g., admin* will yield: administration, administrator, administer, administered, etc.)).

ii. A single search term that contains multiple words or numbers that are connected by a Boolean operator shall be treated as one search term.

C. Final Search Term List: No later than ten (10) days after the exchange of proposed search terms pursuant to Section II(B)(1) above , the parties shall come to agreement on a final list of search terms. The parties agree to use their best efforts to negotiate in good faith the final lists of search terms, including, exchanging the metrics of the total number of search hits containing an individual search term and the number of unique search hits for each term. To the extent that the parties are

unable to agree upon a final list of search terms, the parties shall seek guidance from the Court.

D. Application of Search Terms: Search terms shall be applied to all Key Custodians identified pursuant to section II(A) above. All queries will be run in a non-case sensitive manner, except as otherwise specifically provided in the agreed search term list.

E. Production of Key Custodian Emails: Subject to the removal of any privileged / irrelevant documents (i.e., documents unrelated to the Project), and pursuant to the technical specifications set forth in section IV, below, emails for the Key Custodians responsive to one or more of the agreed search terms will be produced on a rolling basis, and production shall be substantially completed no later than **March 30, 2027**, so as to permit depositions to be completed within the fact discovery deadline set by the Case Management Plan and Scheduling Order, as modified.

F. Good Faith Efforts. The parties shall use good faith efforts to mutually agree upon custodians, search terms, and appropriate search methodologies, and shall consider, in good faith, requests by either party to supplement or refine lists of custodians or search terms, should the ESI derived from such custodians or search terms be insufficient. The parties shall further attempt to cooperatively resolve any disputes regarding custodians or search terms. If the parties are unable to resolve any dispute themselves, either party may submit their dispute to the Court pursuant to the applicable rules of the Court and federal and local rules. In the event of a dispute regarding production, each party will disclose in reasonable detail the methodology

used to locate, identify and collect responsive documents, together with document retention policies and practices, insofar as any dispute arises regarding the sufficiency of a party's production. To the extent the parties are aware of responsive items that no longer exist or that cannot be located, the parties agree to identify the item, state how and when it passed out of existence, or when it could no longer be located, and the reasons for the disappearance or loss.

G. Duty to Conduct Reasonable Inquiry. Notwithstanding the ESI search protocols agreed to herein, the parties may not substitute such protocols for their obligations under the Federal Rules of Civil Procedure, including Rules 26(g) and 34 to otherwise undertake a reasonable inquiry for responsive documents, and they shall produce any relevant or responsive documents found through means other than the agreed upon search terms and parameters.

## III. NON-EMAIL ESI

Non-email ESI shall be the subject of manual searches by the parties to the extent that relevant documents requested by the parties exist in non-email ESI format maintained by the Key Custodians and for non-custodial ESI repositories. In addition, each party shall search for and produce relevant, non-privileged non-email ESI maintained by or for its Key Custodians identified pursuant to section II(A) above, including documents stored on such Key Custodians' computers, network or shared drives, cloud-based storage, and project management platforms, to the extent such ESI relates to the Project and is within the Relevant Period. The parties shall meet and confer in good faith regarding the sources and methodology (including whether the agreed search terms will be applied) for

collecting Key Custodian non-email ESI. The parties are not expected to perform searches of email ESI for potentially responsive documents in addition to the custodian / search term searches set out above for email ESI. Non-email ESI will be produced on a rolling basis commencing no later than thirty (30) days after this Protocol is so-ordered by the Court, and will be substantially completed no later than March 30, 2027. Furthermore, to provide some structure to the production of Non-Email ESI and prevent a last minute "document dump," the parties agree to produce the following categories of Non-Email ESI no later than March 1, 2027:

(a) **Schedule-related documents**. This category includes any and all Project-related schedules for the design, procurement and construction of the Work including all updates and fragments;

(b) **Damages-related documents**: This category comprises all documents supporting the parties' respective damages, including, but not limited to (1) job cost reports, and (2) to the extent the costs are claimed as damages by a party, (i) all contracts, subcontracts, and purchase orders (including all change orders); (ii) all invoices and/or applications for payment submitted to the party, and (iii) all corresponding payments made by the party. Documents for any claimed damages incurred after the production date shall be produced on a rolling basis.

(c) **Written Reports and Minutes**: This category includes written Project reports, including but not limited to any daily, weekly, or

monthly report prepared by or for a party, all Project-related meeting minutes, and further includes all reports prepared by a party and provided to any parent or affiliate company or regulatory agency related to the Project.

(d) **Drawings**: This category includes all drawings issued for bidding and construction of the Project, including all revisions to these drawings and all sketches provided to further detail the drawings.

(e) **Requests for Information (RFIs)**: This category includes any RFIs submitted to the parties' and any corresponding responses.

(f) **Project Photographs;** and

(g) **Test results**: This category includes all test results including, but not limited to, quality control, acceptance, operational capability, reliability, and near-field noise tests; however, shall not include documents created by expert prior to expert disclosure requirements.

Nothing in this ESI Protocol or the category descriptions above shall be construed as an admission by either party that such documents exist, are in the care, custody or control of the parties, or are responsive to a production request by the other party. Nor, for that matter, does this section in any way limit a party's document requests or disclosure obligations.

## IV. TECHNICAL SPECIFICATIONS FOR PRODUCTION OF ESI

A. Attachments: Email attachments must be mapped to their parent by the document or production number. The parties shall confer at a later date over the inclusion of embedded files in document productions.

B. Structured Data: To the extent the above-outlined discovery exchange process requires production of discoverable electronic information contained in a database, disclosure of information such as the database name, business purpose, database owner, and field list may be necessary to inform the parties as to how to best produce relevant data. The parties agree to confer, with an understanding of which fields are relevant, to consider whether, in lieu of producing the database, the parties can agree upon a set of queries to be made for discoverable information or upon the sets of data or fields to be included and generate a report in a reasonably usable and exportable electronic file (e.g., Excel or CSV format) for review by the requesting party or counsel. Upon review of the report(s), the requesting party may make reasonable requests for additional information to explain the database schema, codes, abbreviations, and different report formats, or to request specific data from identified fields.

C. Metadata: The parties agree to produce the following list of metadata fields (to the extent available) to accompany each produced ESI file. Unless otherwise specified, by producing metadata, the producing party affirms that such metadata came, in unaltered format, from its records, with the exception of vendor-entered source/custodian and document/production number fields. The following list identifies the metadata fields that will be produced (to the extent available):

| **Field Name** | **Specifications Field Name** | **Field Type** | **Description (Email)** | **Description (E-Files / Attachments)** |
|---|---|---|---|---|
| BegDoc | Unique ID (Bates number in format e.g., AB0000001) | Paragraph | The Document ID number associated with the first page of an email. | The Document ID number associated with the first page of a document. |
| EndDoc | Unique ID (Bates number in format e.g., AB0000005) | Paragraph | The Document ID number associated with the last page of an email. | The Document ID number associated with the last page of a document. |
| BegAttach | Unique ID (Bates number in format e.g., AB0000001) Parent-Child Relationships | Paragraph | The Document ID number associated with the first page of a parent email. | The Document ID number associated with the first page of a parent document. |
| EndAttach | Unique ID (Bates number in format e.g., AB0000012) Parent-Child Relationship | Paragraph | The Document ID number associated with the last page of the last attachment to a parent email. | The Document ID number associated with the last page of the last attachment to a parent document. |
| Attachment Count | | | | Indicates the number of attachments to the parent document |
| Email Conversation Index / Thread Text | | | ID used to tie together email threads. | |

| **Field Name** | **Specifications Field Name** | **Field Type** | **Description (Email)** | **Description (E-Files / Attachments)** |
|---|---|---|---|---|
| Pages | Pages | Number | The number of pages for an email. | The number of pages for a document. |
| DateSent | | Date (MM / DD / YYYY format) | The date the email was sent. | For email attachments, the Metadata associated with the attachment Native file, where available, otherwise no Metadata. |
| TimeSent | | Time (HH:MM in Coordinated Universal Time (UTC)) | The time an email was sent. | For email attachments, the Metadata associated with the attachment Native file, where available, otherwise no Metadata. |
| Author | Author Display Name (e-mail) | Paragraph | The display name of the author or sender of an email. | The name of the author as identified by the Metadata of the document. |
| To | Recipient | Paragraph | The display name of the recipient(s) of an email. | The display name of the recipient(s) of a document (e.g., fax recipients). |

| **Field Name** | **Specifications Field Name** | **Field Type** | **Description (Email)** | **Description (E-Files / Attachments)** |
|---|---|---|---|---|
| CC | CC | Paragraph | The display name of the copyee(s) of an email. | |
| BCC | BCC | Paragraph | The display name of the blind copyee(s) of an email. | |
| Subject | Subject (e-mail) | Paragraph | The subject line of an email. | The subject of a document from entered Metadata. |
| Custodian | Custodian | Paragraph | The custodian of an email. | The custodian of a document. |
| All Custodians | All Custodians | Paragraph | The custodian(s) whose files contained the same email but whose copy of that email was removed from production during the de-duplication process. | The custodian(s) whose files contained the same document but whose copy of that document was removed from production during the de-duplication process. |
| DateCreated | | Date (MM / DD / YYYY format) | | The date a document was created. |
| TimeCreated | | Time (HH:MM in Coordinated Universal Time (UTC)) | | The time a document was created. |

| Field Name | Specifications Field Name | Field Type | Description (Email) | Description (E-Files / Attachments) |
|---|---|---|---|---|
| DateLastMod | | Date (MM / DD / YYYY format) | | The date a document was last modified. |
| TimeLastMod | | Time (HH:MM in Coordinated Universal Time (UTC)) | | The time a document was last modified. |
| FileName | | | | File name of the original file name. |
| FileExt | | Paragraph | The file extension of the document is defined as the substring of the file name which follows but does not include the last occurrence of the dot character. | The file extension of the document is defined as the substring of the file name which follows but does not include the last occurrence of the dot character. |
| File Path / Original Path (to the extent available) | | E.g., Joe Smith/E-mail/Inbox Joe Smith/E-mail/Deleted Items | Location of the original document / location in the ordinary course of business. This field should be populated for email and e-files. | Location of the original document / location in the ordinary course of business. This field should be populated for email and e-files. |

| **Field Name** | **Specifications Field Name** | **Field Type** | **Description (Email)** | **Description (E-Files / Attachments)** |
|---|---|---|---|---|
| DUPLICATE CUSTODIAN _SOURCEFIL EPATHS | | | Location of copies of file(s) that was (were) removed from production during the de-duplication process. | Location of copies of file(s) that was (were) removed from production during the de-duplication process. |
| MD5HASH | | | The MD5 Hash value or de-duplication key assigned to a document. | The MD5 Hash value or de-duplication key assigned to a document. |
| REDACTED | | Paragraph | Identifies if an email has been redacted in full or part. | Identifies if a document has been redacted in full or part, or if an Excel file has been manually redacted resulting in another field altered. |
| NATIVE LINK | | E.g., D:\NATIVES\ABC00001.xls | The full path to a Native copy of a document. | The full path to a Native copy of a document. |

| **Field Name** | **Specifications Field Name** | **Field Type** | **Description (Email)** | **Description (E-Files / Attachments)** |
|---|---|---|---|---|
| FULLTEXT | | E.g., D:\TEXT\ABC 00001.txt | The path to the full extracted text of the document. There should be a folder on the deliverable, containing a separate text file per document. These text files should be named with their corresponding bates numbers. Note: E-mails should include header information: author, recipient, cc, bcc, date, subject, etc. If the attachment or e-file does not extract any text, then OCR for the document should be provided. | The path to the full extracted text of the document. There should be a folder on the deliverable, containing a separate text file per document. These text files should be named with their corresponding bates numbers. Note: E-mails should include header information: author, recipient, cc, bcc, date, subject, etc. If the attachment or e-file does not extract any text, then OCR for the document should be provided. |

When a metadata field includes a date, the date shall be provided in the following format: mm/dd/yyyy. When a metadata field includes a time, the time shall be provided in the following format: hh:mm:ss (24-hour clock or AM/PM format).

Notwithstanding the foregoing, the parties will confer in good faith prior to the production of documents, with their respective vendors/eDiscovery staff as

needed, to clarify or resolve any issues (e.g., definitions of metadata fields, inconsistencies, burden) concerning the production of metadata and will modify this order to reflect any changes hereto.

D. Duplicates: The parties will employ efforts designed to remove exact duplicate documents from their document production(s) (based on MD5 or SHA-1 hash values, or another reliable deduplication method). The parties agree to confer regarding the deduplication method(s) employed before document production(s), as well as over any disputes regarding deduplication prior to seeking intervention from the Court.

E. Encrypted or Password-Protected ESI: For any ESI that exists in encrypted format or is password-protected, the producing party shall undertake reasonable efforts to provide the receiving party a means to gain access to the files. In the event that files are not decrypted prior to production, the parties shall meet and confer in an effort to supply passwords and other information that will enable the receiving party to obtain access.

F. Electronically Stored Information (ESI) produced in this case may be produced, at the producing party's option, either (1) in a commonly-used production format, e.g., tiff images with accompanying text and load files, or (2) in its native format, i.e. the format in which the ESI was created and maintained, also known as native production. To the extent native files are produced without an accompanying rendering of TIFF images, a slip-sheet will be produced in TIFF format to facilitate bates and confidentiality stamping. If documents requested in native format require redactions, the parties will produce TIFF images for those documents, except that

for Excel and spreadsheet files, the parties will confer regarding how to implement redactions while ensuring that proper formatting and usability are maintained. The native files shall be produced in a folder named "Natives." Additionally, the parties acknowledge that production in TIFF format may be inadequate for certain types of ESI (e.g., spreadsheets, CAD files, scheduling/P6 files). The producing party will produce in native format all audio, video, drawing/autocad, schedule/P6 and spreadsheet-type files, including but not limited to Microsoft Excel and CSV. Microsoft PowerPoint documents do not require production in native format, unless they contain video. To the extent that either party believes that native files should be produced for a specific document or class of documents not required to be produced in native format pursuant to this paragraph, the parties shall confer in good faith. The producing party shall use reasonable efforts to avoid producing system and application files. The parties will discuss any specialized database files (i.e., Microsoft Access, SQL, SAP, etc.) that are responsive to the parties' requests and reach agreement on the most reasonable form of production before any such production is made. During the confer process, the producing party shall provide information concerning the available database fields sufficient to determine the most reasonable form of production. The producing party shall be responsible to provide the receiving party a license for use of any software necessary to access any ESI created in non-standard programs or software.

G. Compression file types (i.e., .CAB, .GZ, .TAR. .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

H. Redactions: Documents requiring redaction shall be redacted and produced in .TIFF format in a way that does not serve to downgrade the ability to electronically search the un-redacted portions of the item.

I. Document Identifiers: Documents produced shall be identified by naming the item to correspond to a Bates identifier according to the following protocol:

iii. The filename will reflect a unique alphanumeric designation identifying the party making production;
iv. The Bates identifier should remain consistent across all productions.

J. The producing party shall produce a unitization file ("load file") for all produced documents in accordance with the following formatting:

OCR and Extracted Text Files (.txt Files):
- Single text file per document containing all of the document pages
- Filenames should be in the following format, where <BegDoc#> is the Document Identifier of the file:
  <BegDoc#>.txt
- Text must be encoded in UTF-8

Native Files:
- The load file should include hyperlinks to the corresponding native file.Filenames should be in the following format, where <BegDoc#> is the Document Identifier of the file, and <.ext> is the appropriate extension for the native format (i.e., .jpg, .tif, etc.):
  <BegDoc#>.<ext>

Index Files:
- "Concordance default" delimited text file utilizing the following characters:
  - The "comma" delimiter is "¶" (020)
  - The "quote" delimiter is "þ" (254)
  - The "new line" delimiter is "®" (174)
- First line must contain the column/field names
- Every row must have the same number of columns/fields (empty values are acceptable)
- Text must be encoded in UTF-8

Notwithstanding the specifications set forth above, the parties agree to confer in advance of any production of documents, and in consultation with their respective vendors/eDiscovery staff, to discuss all load/unitization file specifications.

K. Extracted Text and OCR Files: For each file produced, a single text file shall be provided along with the produced documents and the metadata. The text file name shall be the same as the document identifier of the file. File names shall not have any special characters or embedded spaces. Electronic text must be extracted directly from the native electronic file unless the document requires redaction, is an image file, or is any other native electronic file that does not contain text to extract (e.g., non-searchable PDFs). In these instances, a text file shall be created using OCR and shall be produced in lieu of extracted text. Extracted text shall be provided in UTF-8 format text format. The text files shall be produced in a directory named "Text" or "OCR."

L. Production Media: Documents shall be produced via flash drive or external hard drive (with standard PC-compatible interface), file transfer site or FTP, or such other readily accessible computer or electronic media as the parties may hereafter agree upon (the "production media"). The producing party shall provide along with all document productions a letter identifying the production date and the bates number range of the materials contained on such production media item.

M. Time Zone: To the extent any ESI (e.g., emails) contains an option to select a time zone, all productions shall be made using U.S. Eastern Time Zone, the time zone applicable in the Project location. This will enable consistency for purposes of

deduplication of emails and other electronic documents and will create uniformity such that the chronology of emails and other documents can be easily ascertained.

N. Each production should include a cross-reference load file that correlates the various files, images, metadata field values and searchable text produced.

## V. PRIVILEGE LOGS

1. *Privilege Logs.* A Party withholding documents based on one or more claims of privilege will produce a privilege log, consistent with Federal Rule of Civil Procedure 26(b)(5) and Local Civil Rule 26.2, within 60 days after the completion of its document production. If the document production is a rolling production, the privilege log shall be produced within 60 days after the completion of all rolling phases of the document production. The Parties may modify the deadlines for production of the privilege logs by agreement.

a. When there is a chain of privileged e-mails, the producing Party need only include one entry on the privilege log for the entire e-mail chain, and need not log each e-mail contained in the chain separately, provided that the description of the e-mail chain is accurate as to all privileged e-mails in the chain. If a "family" of documents is entirely privileged, each document in the family shall be listed on the privilege log separately, and the family relationship shall be indicated on the log. In the event a "family" of documents exists that contains both privileged and non-privileged documents, the Parties agree that the privileged documents in the family may be replaced with a slipsheet indicating, "Privileged Document Withheld." The withheld document will be logged and the remaining non-privileged "family" will be produced. Documents produced in a redacted format should be logged as well. Except as set forth in below, when an electronic document or "family" of documents contains privileged and non-

privileged information, the non-privileged portions, along with any of the above-referenced slipsheets and redactions, shall be scanned and produced as a single .pdf file. The Parties will meet and confer if there is a dispute as to whether a document withheld in this manner should be produced.

b. Privileged communications with in-house or outside legal counsel do not need to be logged. The Parties recognize the situation whereby non-privileged documents may be forwarded to a legal team for review, and that the very fact that the documents were grouped together and forwarded to counsel could be considered work product or protected by the attorney-client privilege. Thus, in the event there is an email to either in house or outside counsel that would not have to be logged pursuant to this paragraph, and that has attachments to it that are responsive and not privileged in and of themselves, it is acceptable to produce those documents as though they were loose documents without any reference to the fact that they were part of an email family sent to counsel.

2. *Disclosure of Privileged Information.* Should any Party produce ESI subject to a claim of privilege, the producing Party shall so notify the receiving Party in writing within a reasonable time after discovering the production, and the receiving Party shall promptly either return, sequester or destroy the document and all copies of it. The receiving Party must not use or otherwise disclose the information and/or document subject to the claim of privilege. If the Parties are using a review database, the privileged document must be replaced with a slipsheet indicating the document was removed and delete all extracted text/OCR (other metadata may be retained) associated with the document. The Parties do not need to remove any copies that may remain on server backups after deletion from the active computer system. Thereafter, the

Party claiming privilege must, upon demand, furnish information to the requesting Party supporting its claim of privilege and must preserve the document.

**3.** *Non-Waiver of Privilege.* The production of privileged or work-product protected ESI or documents, whether inadvertent or otherwise, is not a waiver of the privilege or protection from discovery in this case or in any other federal or state proceeding. This Protocol shall be interpreted to provide the maximum protection allowed by law. However, nothing contained herein is intended to or shall serve to limit a Party's right to conduct a review of documents, ESI, or information (including metadata), for relevance, responsiveness, and/or segregation of privileged and/or protected information before production. Nothing herein shall limit the Parties from arguing that any ESI or document is not in fact privileged. Rather, this paragraph is intended only to prohibit arguing that the ESI or document has lost its privilege due to production.

## VI. COST

Each Party will presumptively bear its own costs of production. However, the Parties reserve the right to seek cost shifting, and/or to object to any proposed cost-shifting, as appropriate at a later time. Nothing in this Protocol is intended or should be interpreted as affecting, in any way, a Party's right to seek reimbursement for costs associated with the collection, review, and/or production of documents as allowed by law.

## VII. RIGHT TO SEEK ADDITIONAL DISCOVERY

The Parties agree that they shall proceed in good faith in all respects concerning the production of documents and ESI hereunder. Nothing in this Protocol is intended to limit a party's ability to seek additional discovery either by negotiation or by seeking, upon good cause and demonstration of need, relief.

**PECKAR & ABRAMSON, P.C.**

*Attorneys for Plaintiff*

By: *_/s/ Mark A. Snyder_*
Charles E. Williams, III
Mark A. Snyder
Darien K. Blair
1325 Avenue of the Americas, 10th Floor
New York, NY 10019
(212) 382-0909

Dated: November 16, 2026

**WINDELS MARX LANE & MITTENDORF, LLP**

*Attorneys for Defendants*

By: *_/s/ Daniel F. Corrigan_*
Daniel F. Corrigan

120 Albany Street Plaza
New Brunswick, NJ 08901
(732) 448-2587

Dated: *November 16 2026*

SO ORDERED.
Dated: New York, New York November 17, 2026



HON. HENRY J. RICARDO, United States Magistrate Judge